Charles W. SHAW

v.

MAINE REAL ESTATE COMMISSION
et al.

Supreme Judicial Court of Maine.

Argued March 5, 1981.

Decided April 15, 1981.

**408**

Ralph A. Dyer (orally), Martin J. Foley, Portland, for plaintiff.

Linda M. Pistner (orally), Peter B. Bickerman, Asst. Attys. Gen., Augusta, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN and CARTER, JJ.

CARTER, Justice.

Charles Shaw's real estate salesman's license expired in June 1979. In October 1979 he submitted a renewal application to the Maine Real Estate Commission. The Real Estate Commission sent Shaw notice of hearing, pursuant to 32 M.R.S.A. § 4056(2),[1] stating in part:

*NATURE AND PURPOSE*

This will be an adjudicatory proceeding to determine whether a license should be granted to the applicant. Licenses shall be granted only to persons who are trustworthy and competent to transact the business of a real estate broker or salesman in such manner as to safeguard the interests of the public, and only after satisfactory proof has been presented to the Commission.

In view of the Commission's finding the applicant in violation of 32 M.R.S.A. Chapter 59 as set forth in its letter to the applicant dated May 2, 1978, concerning real estate owned by Edward Madigan of Cape Elizabeth; and the applicants conduct in the listing and offering for sale of the Waldoboro Garage owned by John Miller; a ques-

tion as to the applicant's qualifications has been raised.

At the hearing, Shaw described his education and business experience, responded to questions from members of the Commission, and described his current activities as a "business broker" advertising and negotiating sales of going businesses on behalf of sellers. In March 1980 the Commission issued a decision denying renewal of Shaw's salesman's license and also issued a cease and desist order prohibiting Shaw from all activities requiring a real estate broker or real estate salesman license and specifically pointing out that "so-called 'business brokerage' involving real estate, as all or part of business assets, is included within the definition of real estate broker."

Shaw filed a petition for review of both decisions, pursuant to the Administrative Procedure Act, 5 M.R.S.A. § 11002, and the Superior Court (Cumberland County), affirmed the decisions. We vacate the Superior Court judgment because we conclude that the Commission's decision to deny the license was not supported by substantial evidence. 5 M.R.S.A. § 11007(4)(C)(5). Shaw also raises several objections to procedures followed by the Commission in investigating and acting upon his case. Since we conclude that the salesman's license should be issued, we do not consider these other issues.

The Commission determined that Shaw had failed to meet the requirement of 32 M.R.S.A. § 4103(2) of presenting proof that he was "trustworthy and competent to transact the business of real estate ... salesman in such manner as to safeguard the interests of the public ...." This determination was based on its finding of facts constituting "a pattern in which Mr. Shaw acted as a real estate broker within the meaning of 32 M.R.S.A. § 4001 without holding a real estate broker's license, and further that he had reason to know that he

---

1. 32 M.R.S.A. § 4056(2) provides:

   Hearings may be conducted by the commission to assist with investigations, to determine if cause exists for denial of a license or to determine cause for revocation or sus-

   pension of a certificate of approval or for any other purpose. Notice shall be given to all interested parties at least 10 days prior to the date on which the hearing is set.

was engaging in activities which required a broker's license."

The Commission's first finding of fact states that Shaw attended a meeting in 1975, as a result of which Shaw "should have been made aware that business brokerage activities involving real estate require a real estate broker or salesman license." The evidence does not show that the Commission provided Shaw with a clear statement of its position or a definition of business brokerage or that Shaw made any assurances or representations to the Commission.

The second and third findings involve an incident in May 1978 when Shaw was licensed as a real estate salesman under the supervision of a licensed real estate broker and was found in violation of the real estate law and Commission Rules. The Commission issued a cease and desist order against Shaw because he had advertised a particular piece of property for sale or lease under his own name rather than the name of a real estate broker and because his listing agreement did not contain a specific expiration date. The record shows that the property involved was not part of an active business, but rather a vacant building owned by a friend of Shaw. The Commission's letter advising Shaw of the violation made no reference to the Commission's position on the sale of businesses. In response to this incident, Shaw sent a letter to the Commission stating, in part:

> As I'm sure you are aware, this is not a business area that I participate in, and I simply made a mistake trying to help a friend, in this instance. You may be assured that there will be no repitition [sic] of this violation. I intend to fully comply with the entire body of Maine Regulation Statutes to the best of my ability.

Shaw's letter did not make any assurances with respect to recognizing or adhering to the Commission's position on business brokerage.

The Commission's third set of findings concern a 1978 transaction in which Shaw, purporting to act in a "management consultant capacity," attempted to negotiate the sale of the Waldoboro Garage Company, an automobile dealership whose assets included land and buildings. The evidence shows that Shaw brought suit against a prospective buyer who stopped payment on his deposit check. In that suit, the Superior Court rendered summary judgment for the buyer without reaching the issue of whether Shaw's activity required a real estate broker's license. The Commission concluded that Shaw "should have been aware that his activity involving the Waldoboro Garage did fall within the definition [of real estate broker] in 32 M.R.S.A. § 4001 and therefore did violate 32 M.R.S.A. § 4102,[2] because Charles Shaw did not hold a real estate license."

█ To the extent that these three sets of findings are supported by the evidence, they do not support the determination that Shaw was not sufficiently trustworthy and competent to transact the business of a real estate salesman. The terms "trustworthy and competent" are designed to be flexible criteria. The Legislature has given the Real Estate Commission wide discretion in determining what conduct demonstrates the presence or absence of these qualities and this Court does not purport to lay down any rigid definitions. Nevertheless, a possible misconstruction of the law or a good faith disagreement over a statutory definition is not evidence of incompetence or untrustworthiness, where there is no evidence of deliberate disregard or knowing defiance of the law or public policy.

█ On the record before us, there is evidence to show that Shaw often negotiates sales of businesses that include interests in real estate as part of their assets. There is, however, no evidence that Shaw acted in defiance of any direct order from the Commission or that he violated any

---

2. 32 M.R.S.A. § 4102 provides:

It shall be unlawful for any person, partnership, association or corporation to act as a real estate broker or real estate salesman, or to advertise or assume to act as such real estate broker or real estate salesman, without a license issued by the commission.

specific assurances that he personally made to the Commission. The incidents discussed in the Commission's findings do not establish a pattern of repeated knowing violations of the license law. The evidence shows only that Shaw and the Commission disagree on the issue of whether "business brokers" are required to possess a real estate broker's license—a question that is not clearly answered in Maine law and is not addressed in any Rule of the Real Estate Commission. The only other evidence in the record is Shaw's uncontested testimony concerning his education and business experience. Therefore, the Commission should not have concluded that Shaw failed to present satisfactory proof of his trustworthiness and competence.

We also conclude that the Commission's broad cease and desist order should be reversed. The order prohibits all activities described in 32 M.R.S.A. § 4001 and quotes that section's definition of "real estate," "real estate broker," and "real estate salesman." The order does not purport to be based on any particular violation, but rather states that it is "consistent with" the Commission's order denying renewal of the salesman's license and states the Commission's position that "so-called 'business brokerage' involving real estate" comes within the definition of real estate broker. Since Shaw's disagreement with the Commission's definition of real estate broker, *regardless of the merits of the Commission's position,* was not an adequate basis for denial of his salesman's license, it also provided no basis for a cease and desist order.

Since the cease and desist order should not have been issued, we need not decide whether the Commission's position is a correct interpretation of the statute. Furthermore, there are sound reasons for declining the parties' invitation to make a broad pronouncement on the applicability of the real estate licensing law to a person engaged in so-called "business brokerage." The cease and desist order offers no definition of "business brokerage" and identifies no specific factual context within which we could reach an interpretation of the statute. The parties support their conflicting interpretations of the statute with cases from other jurisdictions deciding whether an unlicensed person is entitled to recover a commission for negotiating a particular sale. The case before us does not, however, present the clearly defined situation that would be involved if we were reviewing a decision based on the facts of a particular transaction. We conclude only that Shaw's resistance to the Commission's position was not an adequate basis for the decisions against him, and we express no opinion on the underlying question of statutory interpretation.

The entry is:

Judgment vacated.

Remanded to Superior Court for entry of order reversing the orders of the Real Estate Commission and directing issuance of a real estate salesman's license.

All concurring.